## The C. R. Stone.[1]

## New York Harbor & Tow-Boat Co. v. The C. R. Stone.

*(District Court, E. D. New York. February 18, 1892.)*

Collision—Battery, New York Harbor—Rounding to—Insistence on Right of Way.

The steam-tug Stone, with a tow, was rounding the Battery from the East to the North river, keeping within 200 or 250 feet of the Battery wall. The steam-boat Fletcher had come down the North river, and was rounding to against the ebb-tide, to make her usual landing near the north end of Castle Garden dock. When the Fletcher began to turn towards the dock, she whistled twice, indicating that she would cross the Stone's bow. This signal the Stone heard, but did not heed, though her pilot knew the landing place and purpose of the Fletcher. The Fletcher repeated her signal, to which an answer of two whistles was given by the Stone. The Stone's tow struck the stern of the Fletcher. *Held*, (1) that the Fletcher had the right to make her landing, and the Stone, navigating unnecessarily near the shore, was bound to give way to her, when there was no difficulty in doing so, i. e., by starboarding at the Fletcher's first signal, and she was in fault for not doing so; (2) the Stone was further in fault for her failure to keep any proper lookout, especially when rounding the Battery; (3) but the Fletcher had no right to run into collision for the enforcement of her right of way, and her continuing on without awaiting the Stone's acquiescence in her first signal of two whistles was a fault, which rendered her also liable for the collision.

In Admiralty. Suit by the owner of the William Fletcher to recover for damages by reason of collision between the Fletcher and a barge in tow of the tug C. R. Stone.

*Wilcox, Adams & Green,* for libelant.

*Carpenter & Mosher,* for claimants.

Brown, District Judge. At a little after 6 o'clock in the morning on May 11, 1891, as the side-wheel emigrant steamer William Fletcher was coming down the North river and rounding to against the ebb-tide to make her usual landing near the northerly end of the Castle Garden dock, her stern was run into and damaged by a barge lashed to the port side of the steam-tug C. R. Stone, which had come out of the East river, and was keeping up along the shore at a distance of only 200 or 250 feet from the Battery wall. Before rounding and when a considerable distance from the Stone, the Fletcher gave a signal of two whistles, which was heard but not answered. The signal was repeated, to which an answer of two whistles was given by the Stone. The captain of the Fletcher testifies that being headed previously about south, he did not begin to round until the Stone's answer of two whistles was heard. The pilot of the Stone testifies that when the Fletcher's first signal was given, the Fletcher had already turned towards the Castle Garden dock, and was heading about east and was only 350 feet distant. He further says that he had not noticed the Fletcher until her first whistle was given. The libel and several witnesses state that the Fletcher began to turn after her first whistle and before her second, and of course before any answer from the Stone. But all the witnesses for the Fletcher estimate that the dis-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

tance of the Stone at the time of the first and second signals was much greater than the estimates of the Stone's witnesses.

I am satisfied that both vessels must be held in fault for this collision. It is in the main like the case of *The Susquehanna*, 35 Fed. Rep. 325. When the Fletcher gave her first signal and began to turn towards her landing place, she was about twice as far from the docks as the Stone. -Her signal was heard. There was then plenty of time and space for the Stone to go out of the way to the left, as it was her duty to do under the circumstances. Had the Stone then properly starboarded, the collision would have been avoided. The Stone was navigating close to the docks, where she had no right to be. The Fletcher, which was recognized by. the Stone, and whose landing place and habits were well known to her, had the right of way to make her landing directly, without any unnecessary delay for the mere convenience of the Stone, since the latter could without difficulty have kept away. The rights of the two vessels were different from those arising on merely passing each other in ordinary navigation. The Fletcher had the right to make her landing; and the Stone, navigating unnecessarily near the shore, was bound to give way to her when there was no difficulty in doing so. In *The Susquehanna*, *supra*, BENEDICT, J., says: "The position of the ferry-boat with relation to the ferry-slip in my opinion cast upon the tug the duty to stop at once, or else, by sheering out in her proper place in the river, to go under the ferry-boat's stern." The Fletcher's first signal of two whistles was not a permission asked to go ahead of the Stone, but notice of a right claimed, and the Stone was bound to heed it and to keep off, if the notice was given in time, and of that I have no doubt. The Stone was in fault for her delay in doing so. The cases cited to the opposite seem to me not applicable. In *The Delaware*, 6 Fed. Rep. 195, the tug could not keep away after the signal was given. In *The Talisman*, 36 Fed. Rep. 600, the tug was from two to three times as far from shore, and had at first no reason to suppose the steamer meant to cross, and stopped as soon as she had notice of that intent.

But the Fletcher had no right to run into collision for the enforcement of her right of way. The course of the Stone was such that collision was pretty certain, unless the Stone acquiesced in the Fletcher's signal and maneuvered accordingly. I am satisfied that the Fletcher did not wait till after the Stone's acquiescence in her second signal, but turned to cross the Stone's bow at once, and continued on till her second signal of two whistles, when it was in fact too late to avoid a collision with the Stone, or else with the vessels moored at the dock. For this the Fletcher was also in fault. *The Susquehanna*, *supra*; *The Fanwood*, 28 Fed. Rep. 373; *The Frisia*, Id. 249, 24 Blatchf. 40; *The John S. Darcy*, 29 Fed. Rep. 644, 648, affirmed, 38 Fed. Rep. 619.

The Stone was further to blame for not keeping any proper lookout, the more especially amid the liabilities to collision in rounding the Battery. This was material because it led the Stone to fatal delay in starboarding. Had a proper lookout been kept by the Stone, the Fletcher's intention to land would have been instantly recognized when her first

signal was given, and no delay would have arisen in properly starboarding at once, instead of waiting for a repetition of the Fletcher's signal; and this would have avoided collision. The libelant is entitled to a decree for half his damages; if not agreed upon, a reference may be taken.